Leon ASHWORTH et ux *v*. Mrs. H. C. HANKINS

5-5081                    452 S. W. 2d 838

Opinion delivered April 20, 1970

*Murphy & Carlisle,* for appellants.

*Putman, Davis & Bassett,* for appellee.

JOHN A. FOGLEMAN, Justice. This is the third appeal in this case. See *Ashworth* v. *Hankins,* 238 Ark. 745, 384 S. W. 2d 254 and *Ashworth* v. *Hankins,* 241 Ark. 629, 408 S. W. 2d 871. We remanded the case to the chancery court for a hearing on appellants' prayer for specific performance or, in the alternative, for damages for breach of contract. After hearing the testimony of Mrs. H. C. Hankins and the rebuttal of Leon Ashworth, the chancellor held that appellants were not entitled to either specific performance or damages. The denial of relief was based upon the court's finding that appellants had repeatedly breached the contract for sale of realty involved, that the Hankinses had the right to, and did, declare a forfeiture, and that there was no conduct on the part of the Hankinses which constitutes a waiver of their right in this respect.[1]

Appellants assert six points for reversal. In view of the disposition that we make of the case, it becomes unnecessary for us to discuss their argument that they were entitled to recover for damages if the remedy of specific performance was not available to them because of impossibility. The other five points are thus stated:

1. The dismissal of appellants' complaint by the chancellor was contrary to the evidence and contrary to the law and the evidence.

---

[1] H. C. Hankins was an appellee, but he has died and no revivor appears in the record.

2. The equitable maxim of equity abhors a forfeiture is controlling in this case.

3. Even if a forfeiture could have been declared under this contract, appellees expressly waived any forfeiture by direct words and actions.

4. The authorized agent of appellees expressly waived any forfeiture and such waiver is binding on the appellees.

5. It was error for the chancellor not to admit the conversation had between Mr. Ashworth and Mr. Perkins into evidence.

The background gleaned from the opinions on the prior appeal and the abstracts on this appeal is as follows:

In 1953 H. C. Hankins and his wife contracted to sell the realty involved in this litigation to Mr. and Mrs. Floyd Mabry for $6,000 to be paid in monthly installments of $50 each. In September of 1960, the Mabrys assigned this contract to appellants with the consent of Mr. and Mrs. Hankins. Appellants assumed the obligations of the Mabrys. The Ashworths were repeatedly delinquent in making their monthly payments, and the delinquency continued as much as three months on several occasions. During the 15 months preceding the filing of this suit, Mr. and Mrs. Hankins on several occasions accepted multiple payments on these delinquencies. The last payment by the Ashworths was made in June of 1962 and left a balance of $2,205.47 on the principal indebtedness.

On October 18, 1962, appellants filed this action and tendered the full amount which would have then been due under the contract. They filed notice of lis pendens simultaneously. The chancellor, in March of 1963, sustained a motion by the Hankinses to dismiss the complaint for insufficiency of the evidence on behalf of appellants. During the pend-

ency of an appeal from that action, Mr. and Mrs. Hankins conveyed the property to Ollie Tackett by deed dated May 24, 1963, and recorded May 29, 1963. We reversed on November 30, 1964, holding that appellants had made a prima facie case for specific performance in view of equity's abhorrence of forfeitures requiring that the slightest circumstances indicating waiver be seized upon to avoid the consequences.

Thereafter, the chancery court granted a motion to dismiss appellants' suit for want of jurisdiction, because of the transfer of the property. We reversed, holding that the statutory lis pendens notice followed the litigation to its conclusion. The decree now before us was rendered after completion of evidence following the remand on the latter reversal.

H. C. Hankins died between the remand and the completion of the trial. Mrs. Hankins was the only witness to testify adversely to appellants. She testified that the Ashworths failed to pay insurance premiums and taxes as required by the contract. She stated that five letters written by Hankins were posted in the mails. The fourth of this series advised that if full payment of all delinquencies were not made by September 1, 1962, the sellers would take the property back. When payment was not made by that time she and her husband went to Ashworth's place of business. The parties agree that an extension was then granted. Ashworth claimed that a sale of the property had been made which would enable appellants to pay the remaining balance. Mrs. Hankins testified that an undated letter was written and posted after the visit to Ashworth before September 26 confirming that date as the deadline. Ashworth denied ever having received that letter. When payment was not made on the date specified, the Hankinses took possession of the property, commenced repairs and redeemed the property from delinquent tax sales. They also withdrew documents they had placed in escrow to be

delivered when the payments required had been made by the purchaser.

Appellants' argument is that the preponderance of the evidence showed that there had been a waiver of the right of forfeiture. They rely upon the habitual acceptance of delinquent payments and the extension of time allowed in September 1962. They also rely upon the denial of Ashworth that he ever received the Hankins letter indicating a deadline of September 26, which admittedly was undated and bore the name of no addressee. Mrs. Hankins was very positive that this letter had been addressed to the Ashworths and properly posted. Yet as the chancellor pointed out, no payment was actually tendered until shortly before the filing of this suit on October 18. Appellants contend that they thought they had as long as necessary for their purchaser to obtain a loan for the purchase money. On the testimonial conflict the chancellor held against appellants and we are unable to say that his holding was against the preponderance of the evidence.

Appellants also support their argument that there was a waiver of forfeiture by contending that the closing of the loan was delayed because the abstract of title, released to them when the extension was granted, disclosed that the title was not marketable because of a power and light company easement across the property. If this was the case, appellants never advised either Mr. or Mrs. Hankins of this impediment. Ashworth testified that he did not communicate with either Mr. or Mrs. Hankins but, after September 26, conveyed this information to Mr. Rex Perkins, the attorney for the Hankinses, who had died before the trial. Evidence of this communication and of the attorney's alleged grant of a further extension was properly excluded by the chancellor.

There was no evidence that this attorney had been clothed with authority to grant an extension or waive any rights of his clients, by express grant or by their conduct, as was the case in *Laird* v. *Byrd*, 177 Ark. 1114,

9 S. W. 2d 571. In order to prevail on the ground that Perkins was the agent of Mr. and Mrs. Hankins, it was incumbent upon appellants to show that he was more than just an attorney to advise the vendors with reference to the transactions taking place, to receive payments which appellants might make, or to represent them in closing when the payment was made. *Taylor v. Connell,* 233 Ark. 440, 345 S. W. 2d 4. See also *United Equitable Ins. Co. v. Karber,* 243 Ark. 631, 421 S. W. 2d 338; *Clark v. Deupree,* 177 Ark. 384, 7 S. W. 2d 1; *Armitage v. Morris,* 215 Ark. 383, 221 S. W. 2d 9. The mere retainer of an attorney does not clothe him with authority to grant an extension of time, waive a forfeiture, alter the terms of a contract or act otherwise beyond the scope of his actual or apparent authority. *Cullin-McCurdy Const. Co. v. Vulcan Iron Works,* 93 Ark. 342, 124 S. W. 1023; *Pickett v. Merchants' National Bank of Memphis,* 32 Ark. 346.

There is no doubt that a vendor may, by his acts and conduct, waive his right of forfeiture. Such a waiver will be found to exist when the vendor habitually accepts delinquent payments. It has been held that a vendor's acceptance of payment of a past due installment, after notice to the purchaser that forfeiture would be declared if that installment and the accumulated delinquent balance were not paid on the due date, lulled the purchaser into feeling assured of an extension for the next subsequent payment so that forfeiture could not be enforced for nonpayment. *Triplett v. Davis,* 238 Ark. 870, 385 S. W. 2d 33. Those circumstances do not exist here. Appellants were reminded by letter of March 22, 1962, that payments were more than two months delinquent and Ashworth had been told that he must make these payments on time, and warned that if they were not made, Hankins would take over the property. By letter of April 6, appellants' delinquency on tax payments and default in maintaining insurance on the property were called to their attention with a notice that failure to take care of these items would result in forfeiture.[2] This threat, with an insistence that appellants

[2]These defaults were never remedied.

comply with the contract, was repeated by letter of May 4. Finally, the letter of August 22, 1962, was notice that the Hankinses would take over the property unless payment in full were made by September 1. The specific granting of an extension after this deadline was no basis for appellants to believe that still further extension would be granted. But, thereafter, the undated letter advised appellants that payment in full was expected, as promised, by September 26, and, if not made, the Hankinses would take over the property. Neither appellants, nor their purchaser, made immediate tender of the balance due upon notice or before the forfeiture had been effectuated as was the case in *Triplett* v. *Davis, supra,* and *Turpin* v. *Beach,* 88 Ark. 604, 115 S. W. 404. Nor is this action by one who had acquired rights in the property from the purchaser, before the forfeiture was declared by the vendor, as was the case in *Braddock* v. *England,* 87 Ark. 393, 112 S. W. 883. In this case it was made abundantly clear that, in spite of past conduct, further indulgence could not be expected. The right of a vendor, who, by his conduct, has waived right to declare a forfeiture, to reinstate that right by a clear and definite notice allowing the purchaser a reasonable opportunity to pay has been clearly established. *Hodges* v. *Campbell,* 211 Ore. 428, 316 P. 2d 312 (1957); *Arizona Title Guarantee & Trust Company* v. *Modern Homes, Inc.,* 84 Ariz. 399, 330 P. 2d 113 (1958); *Cleland* v. *Cleland,* 7 Ohio Op. 2d 206, 152 N. E. 2d 914 (Ct. Com. Pleas, 1958); *Atchison Sav. Bank* v. *Richards,* 131 Kan. 81, 289 P. 975 (1930); *Grippo* v. *Davis,* 92 Conn. 693, 104 A. 165 (1918); *Great Western Inv. Co.* v. *Anderson,* 162 Wash. 58, 297 P. 1087 (1931); *Los Angeles Inv. Co.* v. *Wilson,* 60 Cal. App. 53, 212 P. 211 (1923); *Sliwinski* v. *Gootstein,* 234 Mich. 74, 208 N. W. 47 (1926); *Drake* v. *Lippman,* 234 Mich. 80, 208 N. W. 50 (1926); *Moore* v. *Kelly,* 57 Okla. 348, 157 P. 81 (1916); *Tait* v. *Reid,* 158 Iowa 466, 139 N. W. 1101 (1913). While we are not aware of any Arkansas case that turns upon this point, it was clearly indicated in *Berry* v. *Crawford,* 237 Ark. 380, 373 S. W. 2d 129, that waiver by conduct such as was involved here extends only to the right of forfeiture without notice.

There was no statement or conduct on the part of Mr. or Mrs. Hankins subsequent to the clear declaration of their intention to declare a forfeiture after September 26, from which it could be said that a different intention could be inferred, as was the case in *Vernon* v. *McEntire,* 232 Ark. 741, 339 S. W. 2d 855. The facts here are more nearly in accord with *Souter* v. *Witt,* 87 Ark. 593, 113 S. W. 800, where we held that the right of forfeiture by a vendor was not lost in the absence of any conduct on his part that would warrant the purchaser's belief that time for payment would be extended beyond the date the last payment was due, even though the vendor had always been willing to extend the time for payment of other indebtedness the purchaser had owed him and had told the purchaser after the contract was made that it would be all right if all the notes evidencing the purchase price were paid by the time the last one was due. In that case, as here, the vendor promptly asserted his right to a forfeiture after the last note was due.

We are unable to say that the findings of the chancellor are against the preponderance of the evidence.

The decree is affirmed.