GUARANTY TRUST CO. OF NEW YORK, EXECUTOR, ESTATE OF LOUIS SHERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10758. Promulgated January 23, 1929.

*Franklin C. Parks, Esq.*, for the petitioner.
*J. E. Mather, Esq.*, for the respondent.

**OPINION.**

LITTLETON : Under the motion granted for severance of issues, the questions to be considered at this time are the following, which are contended for by the petitioner and denied by the Commissioner:

(a) That annuity payments in the amounts of $100,000 and $99,999.96 received by petitioner's decedent during 1921 and 1922, respectively, from the Guaranty Trust Company of New York, constituted the return of capital and may not be included in taxable net income for the reason that the sale by petitioner's decedent to said Guaranty Trust Company of a certain leasehold in consideration of an annuity of $100,000 was a closed transaction in the year 1919.

(b) That the leasehold sold by petitioner's decedent to said Guaranty Trust Company, being a renewal of an original leasehold which, prior to said sale, expired and was renewed, in accordance with its terms, was property of such nature as may by competent evidence be shown to have had a basic value at March 1, 1913, greater than cost, for the purpose of determining gain or loss on sale at date or dates of sale subsequent to renewal date.

As to whether the transaction in 1919 is to be considered a closed transaction, we fail to see wherein a distinction can be made in the case at bar, as to this feature, and those presented in *Ruth Iron Co. et al.*, 4 B. T. A. 1151, affirmed by the Circuit Court of Appeals, Seventh Circuit, in *Kosmerl* v. *Commissioner of Internal Revenue,*

25 Fed. (2d) 87, and also by the Circuit Court of Appeals, Eighth Circuit, in *Ruth Iron Co.* v. *Commissioner of Internal Revenue*, 26 Fed. (2d) 30); *Julia Andrews Bruce et al.*, 5 B. T. A. 300, and *Edith Andrews Logan et al.*, 12 B. T. A. 586, wherein transactions substantially similar to the one here in question were considered complete in themselves, or an exchange of property for property in which a gain or loss might be considered as having been realized. In the transaction which we are now considering Sherry exchanged leaseholds for an annuity contract, both of which are well recognized as property. We are not impressed by the argument of the Commissioner that the annuity contract could not be considered as having a fair market value merely because it could not be foreseen in 1919 how long Sherry might live, and accordingly that this could not be considered a closed transaction. Admittedly, no one could tell in 1919 how long Sherry might live or that he might not die the next day after the sale took place, but we fail to see why this should make the annuity contract of no value, or render it incapable of valuation. In any annuity contract, where payments are to be made during the life of a given person, similar uncertainty exists, yet in the numerous cases which have come before the courts respecting the value for such contracts we do not find where the conclusion contended for by the Commissioner has been reached. In fact, the method usually adopted of determining the present value of future contingent interests in property by the use of mortality tables is so well recognized that the court said in *Simpson* v. *United States*, 252 U. S. 547, that " It is much too late to successfully assail a method so generally applied."

The argument that the annuity contract might not have had the full fair market value which would be shown by a determination of the present worth of an annuity of $100,000, based on the expected life usually shown for a man 63 years of age, because of peculiar conditions which may have surrounded Sherry's health when the transaction took place, is no answer, if conceded, to the proposition that the contract had a fair market value. Since annuity contracts are well recognized as having a value we see no insurmountable difficulties in fixing a fair market value based upon the peculiar conditions in an individual case. What the value was in this instance we are not now asked to determine, nor are we concerned with the gain or loss which may have arisen from the transaction for the reason that the year 1919 is not before us. We are of the opinion, however, that the exchange of the leaseholds for the annuity contract constituted a closed and completed transaction and that in the determination of whether gain was realized upon the receipt of annuity payments in 1921 and 1922, there must be taken into consideration the capital value of the contract in 1919, represented by its fair market value at that time.

We can not, however, agree with the petitioner that no income would be accountable for by Sherry subsequent to 1919 on account of annuity payments received until the entire capital value of the contract at date of receipt is returned. The cost to the Guaranty Trust Co. of the leaseholds acquired was the annuity contract given in exchange therefor, and the fair market value of this contract when received by Sherry would represent a capital value to him, or starting point from which we would determine the taxability of amounts received on account of this contract. (Cf. *Steinbach Co.*, 3 B. T. A. 348, and *Security Trust & Savings Bank, Trustee, et al.*, 11 B. T. A. 833.) This capital value Sherry is entitled to have returned him free of tax, but when it is being returned in the form of annuity payments each payment received constitutes in part a return of capital and in part a gain. The capital returned in the annuity payments received in 1921 and 1922 would be the present worth of these amounts in 1919 when the annuity contract was received, and the gain derived from such payment would be the difference between the foregoing present worth of such payments and the total amount received. *Florence L. Klein et al.*, 6 B. T. A. 617.

In view of the conclusion reached as to the first question presented, it becomes unnecessary to consider the second question presented. But since the issue as to the fair market value of the annuity contract is not now before us and since a determination of this issue is necessary before the correct deficiencies, if any, can be determined, the case is restored to the calendar for further proceedings consistent with this opinion.