MAUD GILLESPIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98770. Promulgated January 22, 1941.

*Harold E. Rorschach, Esq.*, for the petitioner.
*Stanley B. Anderson, Esq.*, for the respondent.

OPINION.

HILL: The substantial question which we are called on to decide here is the nature of the contract entered into between petitioner and F. A. Gillespie and the company on May 15, 1929. The petitioner argues initially (1) that it constituted a sale of the properties transferred, with payment to be made in annual installments, and the annual payments, therefore, constituting a return of capital, may not be taxed as income. (2) It is contended in the alternative that if the amounts agreed under the contract to be paid to petitioner are considered annuities, their taxation under section 22 (b) (2) of the Revenue Act of

1934,[1] is unconstitutional, since the statute, in making an arbitrary division between return of capital and income, taxes the former as income. This result, it is contended, is beyond the limits of the power conferred by the Sixteenth Amendment. (3) Petitioner argues further that, if the amounts in question are held taxable as annuities, the cost basis to be used in applying section 22 (b) (2), *supra*, must be only the cost from a reputable insurance company of the annuity payable to the petitioner. It is agreed by both parties that the petitioner was the owner of one-half the properties transferred, the value of which was in excess of the fair cost of annuity agreed to be paid to petitioner. This excess, it is contended, did not constitute consideration for the annuity but was a gift to the petitioner's children through the agency of the company and thus may not be included in the base on which the 3 percent taxable return is to be computed. (4) Finally, it is argued that $2,666.25 of the amount in question may not be taxed as income in any event, for the wholly separate reason that it represented the proceeds of a loan.

(1) We may dispose of the first argument of the petitioner without extended consideration. The contract of May 15, 1929, may not, in our view, be interpreted as an ordinary sale or exchange of capital assets with payment to petitioner extended over several years. The distinguishing peculiarity of an annuity—that its continuance is dependent entirely on the life of the recipient of the payments—is here present. By statute, amounts received under contracts of this nature are made taxable to a limited degree and the direction of the statute may not be ignored. It can make no difference, in our opinion, that the consideration for the annuity was the transfer of property rather than money, and in this view we are sustained by *Florence L. Klein*, 6 B. T. A. 617, and *Guaranty Trust Co. of New York, Executor*, 15 B. T. A. 20.

---

[1] SEC. 22. GROSS INCOME.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(2) ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

(2) Adverting to petitioner's argument that the application of section 22 (b) (2) to the facts presented is unconstitutional, we deem this contention without substantial basis. The scheme devised by Congress for taxing amounts received as annuities may not, in the light of its legislative history, be considered arbitrary, see *Title Guarantee & Trust Co., Executor*, 40 B. T. A. 475, 480–482, or a tax on capital, see *F. A. Gillespie*, 38 B. T. A. 673. It is rather a method reasonably arrived at, which in the great majority of cases will result fairly for both the taxpayer and the tax gatherer. In a situation where the division between income and a return of capital is difficult, if not impossible, some latitude must be allowed to the lawmaker and the possibilities for an arbitrary result in isolated cases must be appraised against the necessity for taxing the transaction in question both as a means to revenue and as a means to discourage or prevent tax avoidance. In the light of the circumstances requiring the enactment of the statute in question, which are set out more at length in the cases cited above and in *Anna L. Raymond*, 40 B. T. A. 244, we can not say that it is unconstitutional as sought to be applied here by the Commissioner. Accordingly, petitioner must fail in this contention.

(3) The alternative argument of the petitioner presents essentially a question of fact: Whether the consideration for the annuity agreed to be paid to her under the contract of May 15, 1929, was the entire property transferred by her under that agreement, or only that portion of the property required to purchase those annuities from a reputable insurance company.

This identical question as it related to the tax liability of F. A. Gillespie, cotransferor with petitioner under the agreement of May 15, 1929, was before us in *F. A. Gillespie, supra*, and we held there that the entire properties transferred were consideration for the annuities, in view of the provisions of the contract and in the absence of other evidence explaining the purpose of the transferors in conveying properties in excess of the fair cost of such annuities. In the present case that excess has been explained and the deficiency in evidence supplied. In her deposition petitioner has testified that her purpose in making transfer of the excess properties was to benefit her children or grandchildren and to safeguard their future income. This she thought best to accomplish by transferring all but a small portion of her properties to the company, instigating thereby a similar transfer by her husband. Since the children were then the beneficial owners of the larger part of the company and were, by virtue of the 1921 trust agreement, to become the sole owners of the company, along with the grandchildren, this transfer secured to them the properties then owned by their parents. The last possibility of

the diversion of any of it away from them was precluded by the provision of the contract of May 15, 1929, that F. A. Gillespie might not sell any of the stock of the company held by him as trustee without the consent of the directors of the company. Petitioner testified in this proceeding, in effect, that she gave her properties to the company to safeguard her children and grandchildren, subject to the provision that certain sums be paid to her annually during her lifetime, and that she considered the remainder of the value of the property over the cost of such annuity to be a gift or contribution for the benefit of her children and grandchildren. This evidence, fitted with the circumstances of the instant case, compels the finding that the properties transferred to the company by petitioner in excess of the fair cost of the annuity secured to her thereby did not constitute consideration for that annuity. In the present circumstances it becomes unnecessary to go further and decide whether the excess amount was paid to the company as a gift, as in *Anna L. Raymond*, *supra*, or as a contribution to capital, see *Robert H. Scanlon*, 42 B. T. A. 997. In neither event may this excess amount be included in the cost basis of the annuity required for computation of the tax due under section 22 (b) (2).

Respondent objects to the consideration of the evidence noted on two grounds: It is argued, first, that the "issue that a part of the property transferred to the corporation was a gift" was not properly raised in the pleadings or at the hearing. This "issue" we regard as properly presented under petitioner's contention that only the fair cost of the annuities acquired may be used in computing the 3 percent limitation placed on the tax by section 22 (b) (2). It forms an integral part of that argument and need not be pleaded as a separate issue. In the second place, respondent has moved to strike petitioner's entire testimony on this point on the ground that it is immaterial and that it conflicts with the parol evidence and best evidence rules. At the hearing ruling on this motion was reserved for disposition in this opinion. The materiality of the testimony to the issues presented we deem apparent. The parol evidence rule applies only as between the parties to the agreement and can not, therefore, apply in the instant case. See *Bertelson & Peterson Engineering Co.* v. *United States*, 60 Fed. (2d) 745; *Indianapolis Glove Co.* v. *United States*, 96 Fed. (2d) 816. Moreover neither rule may apply where there is ambiguity in the written language; here the terms of the two agreements entered into on May 15, 1929, conflict. In one the payment of annuities is described as "consideration" and in the other as "part consideration" for the transfer of the properties. The resultant confusion of meaning may properly be dispelled in this instance by the testimony of petitioner. See *Bertelson & Peterson Engineering*

*Co.* v. *United States, supra,* at page 747. Cf. *A. L. Wilson Co.,* 24 B. T. A. 1056. This conflict of terms was noted in *F. A. Gillespies, supra,* at page 677, but in the absence of any explanatory evidence the presumption favoring the Commissioner compelled the result reached there. Respondent's objections and motion are accordingly overruled.

(4) The final point of controversy on which we must rule here is the petitioner's claim that $2,666.25 of the amount received from the company was intended as a loan to be used to discharge a portion of the mortgage on petitioner's property, together with accrued interest. The evidence shows, however, that no note was executed as evidence of that loan, that no interest was agreed on or paid, and that no repayment of principal has been made. Neither was the loan reflected in the balance sheet of the company as an asset. In these circumstances, we think the petitioner has failed to make adequate proof that such an amount constituted a loan. The impression that it was paid as a part of the amount due under the agreement of 1929 is gained and strengthened by the fact that the company was a closely held corporation and that petitioner had shortly before the taxable year relinquished the right to receive a portion of her annuity in return for the payment of an installment on the mortgage in question from another source. Accordingly, we hold that no part of the $17,666.25 received by petitioner during the taxable year was a loan and that the entire amount was paid as an annuity under the contract of May 15, 1929.

There remains the determination of the amount of income taxable to petitioner. This is to be computed on the basis of 3 percent of the cost of an annuity of $25,000 purchased by petitioner on May 15, 1929, from a reputable insurance company. The $25,000 figure must be taken in preference to the $15,000 sum contended for by petitioner, since the former amount was that for which the properties were transferred. Subsequent relinquishment of a portion of the annuity can not alter the determination of the amount which was transferred under the 1929 contract as consideration for the annuities receivable by petitioner. No argument is made, it should be noted, that the $10,000 guarantee of the dividends to be received annually by petitioner did not in itself constitute an annuity. Both parties seem to concede that it falls in a class with the $15,000 annuity and we have so treated it.

Since the parties have stipulated that the cost of such an annuity is $327,562.50, petitioner's taxable income in 1935 is held to be 3 percent of that amount, or $9,826.88.

*Decision will be entered under Rule 50.*